RETURN TO CUSTOMER

Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Robert Ahdoot, SBN 172098
rahdoot@ahdootwolfson.com
Theodore W. Maya, SBN 223242
tmaya@ahdootwolfson.com
Bradley K. King, SBN 274399
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

Attorneys for Plaintiff,
CHRISTINA WONG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CHRISTINA WONG, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company; and DOES 1-10,

Defendants.

CASE NO. CV14-0703 SJO (JCx)

CLASS ACTION COMPLAINT FOR:

1. Violation of the California Unfair Competition Law, Business & Professions Code §17200, *et seq.*
2. Invasion of Privacy – Intrusion, Public Disclosure of Private Facts, Misappropriation of Likeness and Identity, and California Constitutional Right to Privacy
3. Negligence
4. Bailment
5. Conversion
6. Violation of Cal. Civ. Code § 1798.80, *et seq.*
7. Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

DEMAND FOR JURY TRIAL

By Fax

CLASS ACTION COMPLAINT

1    Plaintiff CHRISTINA WONG ("Plaintiff") brings this class action against
2    Defendants THE NEIMAN MARCUS GROUP, LLC ("Neiman Marcus" or
3    "Defendant"), a Delaware limited liability company, and DOES 1-10 (collectively,
4    "Defendants") on behalf of herself and all others similarly situated to obtain damages,
5    restitution and injunctive relief for the Class, as defined below.  Plaintiff makes the
6    following allegations upon information and belief, except as to her own actions, the
7    investigation of his counsel, and the facts that are a matter of public record:

8    **PARTIES**

9        1.     Plaintiff CHRISTINA WONG is an individual who resides in this
10   Judicial District.  Plaintiff is a regular shopper at Neiman Marcus stores, and most
11   recently made purchases at the Beverly Hills retail location in August and December of
12   2013.  Specifically, she made one retail transaction on August 29, 2013, and two
13   additional retail transactions on December 23, 2013.  In addition, Plaintiff recently
14   made two online transactions with Neiman Marcus on September 24, 2013 and
15   December 9, 2013, respectively.  On January 22, 2014, Plaintiff received an email
16   from Neiman Marcus informing her of the data breach described below.

17       2.     Defendant THE NEIMAN MARCUS GROUP, LLC is a Delaware
18   limited liability company headquartered in Dallas, Texas.  Defendant operates retail
19   stores within this District, including the Beverly Hills, California location at which
20   Plaintiff's purchases were made.

21   **JURISDICTION AND VENUE**

22       3.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  In
23   the aggregate, Plaintiff's claims and the claims of the other members of the Class
24   exceed $5,000,000 exclusive of interest and costs, and there are numerous class
25   members who are citizens of states other than Neiman Marcus' states of citizenship,
26   which are Texas and Delaware.

27       4.     This Court has personal jurisdiction over Defendants because Neiman
28   Marcus is authorized to do business in the State of California, and operates stores

1 | within this Judicial District.

2 |     5.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because many

3 | of the acts and transactions giving rise to this action occurred in this District and

4 | because Neiman Marcus is subject to personal jurisdiction in this District.

5 | **GENERAL ALLEGATIONS**

6 |     6.    Neiman Marcus is an American luxury specialty department store.

7 | Millions of Americans regularly shop at Neiman Marcus stores.

8 |     7.    Plaintiff is a regular shopper at Neiman Marcus stores, and most recently

9 | used her credit and/or debit card at a Neiman Marcus store in this Judicial District (the

10 | Beverly Hills, California location) in August and December of 2013.

11 |     8.    News of a data breach at Neiman Marcus stores was first published by a

12 | blogger (Brian Krebs of <http://krebsonsecurity.com/>) on or about January 10, 2014,

13 | before Neiman Marcus made any attempt whatsoever to notify affected customers.  In

14 | his report, Mr. Krebs quoted a company statement: "On January 1st, [a] forensics firm

15 | discovered evidence that the company was the victim of a criminal cyber-security

16 | intrusion and that some customers' cards were possibly compromised as a result." *Id.*

17 | (internal quotations omitted).

18 |     9.    As this news broke, Neiman Marcus's statements concerning the data

19 | breach were vague and not designed to notify affected customers directly.  On January

20 | 10, 2014, Neiman Marcus posted the following statements on its Twitter account (not

21 | on the shopping site regularly accessed by customers): "The security of our customers'

22 | information is always a priority and we sincerely regret any inconvenience"; and "We

23 | are taking steps, where possible, to notify customers whose cards we know were used

24 | fraudulently after purchasing at our stores." <https://twitter.com/neimanmarcus> (last

25 | visited Jan. 27, 2014).

26 |     10.    On January 11, 2014, Ginger Reeder, a spokeswoman for Neiman

27 | Marcus, indicated in a press email that "the retailer had been notified in mid-December

28 | by its credit card processor about potentially unauthorized payment activity following

3

1  customer purchases at stores."

2  <http://www.npr.org/templates/story/story.php?storyId=261675926> (last visited Jan.

3  27, 2014).  Despite initially learning of the data breach in mid-December of 2013,

4  Neiman Marcus *failed to notify its customers until one month later*, when Brian

5  Krebs first broke the story on January 10, 2014.  In its first company statement,

6  Neiman Marcus also conceded that *a forensics firm confirmed the data breach ten*

7  *days earlier*.  At any one of these points, Neiman Marcus could have taken immediate

8  action to limit the damage to its customers by shutting down affected systems or at

9  least notifying customers at the point of sale, but it did not do so.

10       11.  On January 22, 2014, Neiman Marcus indicated that approximately 1.1

11  million customer payment cards used for purchases from July 16, 2013 to October 30,

12  2013 were exposed during the data breach.

13  <http://www.reuters.com/article/2014/01/23/us-neiman-databreach-

14  idUSBREA0M1M320140123> (last visited Jan. 27, 2014).  Neiman Marcus further

15  indicated that approximately 2,400 of the affected customer credit/debit cards were

16  subsequently used fraudulently.  *Id.*

17       12.  Despite limiting the purported vulnerable purchase period to July through

18  October of 2013, Neiman Marcus CEO Karen Katz stated on the company's website

19  that it would be notifying customers who shopped at Neiman Marcus stores between

20  January 2013 and January 2014.  <http://www.neimanmarcus.com/NM/Security-

21  Info/cat49570732/c.cat> (last visited Jan. 27, 2014).

22       13.  Ms. Katz further stated: "While the forensic and criminal investigations

23  are ongoing, we know that malicious software (malware) was clandestinely installed

24  on our system. It appears that the malware actively attempted to collect or 'scrape'

25  payment card data . . . ."  *Id.*  This data includes customers' names, credit and debit

26  card numbers, card expiration dates, and the embedded security code on the magnetic

27  strip on the back of the cards.

28       14.  Thieves could not have accessed this information and installed the

CLASS ACTION COMPLAINT

1   software on Neiman Marcus' point-of-sale machines but for Defendants' negligence.

2       15.    Defendants failed to implement and maintain reasonable security

3   procedures and practices appropriate to the nature and scope of the information

4   compromised in the data breach.

5       16.    On information and belief, Plaintiff's identifying and financial

6   information was disclosed in the data breach.  Plaintiff received an email apology from

7   Neiman Marcus on January 22, 2014 informing her of the data breach.

8                    **CONSEQUENCES OF DEFENDANTS' CONDUCT**

9       17.    The ramifications of Defendants' failure to keep class members' data

10  secure are severe.

11      18.    The information Defendants lost, including Plaintiffs' identifying

12  information and other financial information, is "as good as gold" to identity thieves, in

13  the words of the Federal Trade Commission ("FTC").  FTC Interactive Toolkit,

14  *Fighting Back Against Identity Theft*, available at

15  <http://www.a2gov.org/government/safetyservices/Police/Documents/FTC%20identity

16  %20theft%20guide.pdf> (last visited Jan. 27, 2014).  Identity theft occurs when

17  someone uses another's personal identifying information, such as that person's name,

18  address, credit card number, credit card expiration dates, and other information,

19  without permission, to commit fraud or other crimes.  *Id.*  The FTC estimates that as

20  many as 10 million Americans have their identities stolen each year.  *Id.*

21      19.    As FTC recognizes, once identity thieves have personal information,

22  "they can drain your bank account, run up your credit cards, open new utility accounts,

23  or get medical treatment on your health insurance."  FTC, Signs of Identity Theft,

24  available at <http://www.consumer.ftc.gov/articles/0271-signs-identity-theft> (last

25  visited Jan. 21, 2014).

26      20.    Identity thieves can use personal information such as that pertaining to the

27  Class, which Defendants failed to keep secure to perpetrate a variety of crimes that do

28  not cause financial loss, but nonetheless harm the victims.  For instance, identity

1    thieves may commit various types of government fraud such as: immigration fraud;

2    obtaining a driver's license or identification card in the victim's name but with

3    another's picture; using the victim's information to obtain government benefits; or

4    filing a fraudulent tax return using the victim's information to obtain a fraudulent

5    refund.

6          21.    In addition, identity thieves may get medical services using the Plaintiffs'

7    lost information or commit any number of other frauds, such as obtaining a job,

8    procuring housing, or even giving false information to police during an arrest.

9          22.    Annual monetary losses from identity theft are in the billions of dollars.

10    According to a Presidential Report on identity theft produced in 2007:

11            In addition to the losses that result when identity thieves
fraudulently open accounts or misuse existing accounts, . . . individual

12    victims often suffer indirect financial costs, including the costs incurred in
both civil litigation initiated by creditors and in overcoming the many

13    obstacles they face in obtaining or retaining credit.  Victims of non-
financial identity theft, for example, health-related or criminal record

14    fraud, face other types of harm and frustration.

15            In addition to out-of-pocket expenses that can reach thousands of
dollars for the victims of new account identity theft, and the emotional toll

16    identity theft can take, some victims have to spend what can be a
considerable amount of time to repair the damage caused by the identity

17    thieves. Victims of new account identity theft, for example, must correct
fraudulent information in their credit reports and monitor their reports for

18    future inaccuracies, close existing bank accounts and open new ones, and
dispute charges with individual creditors.

19

20    The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic*

21    *Plan*, at p.11 (Apr. 2007), available at

22    <http://www.ftc.gov/sites/default/files/documents/reports/presidents-identity-

23    theft-task-force-report/081021taskforcereport.pdf> (last visited Jan. 27, 2014).

24          23.    According to the U.S. Government Accountability Office ("GAO"),

25    which conducted a study regarding data breaches:

26            [L]aw enforcement officials told us that in some cases, stolen data may be
held for up to a year or more before being used to commit identity theft.

27    Further, once stolen data have been sold or posted on the Web, fraudulent
use of that information may continue for years. As a result, studies that

28    attempt to measure the harm resulting from data breaches cannot
necessarily rule out all future harm.

CLASS ACTION COMPLAINT

GAO, *Report to Congressional Requesters*, at p.33 (June 2007), available at
<http://www.gao.gov/new.items/d07737.pdf> (last visited Jan. 27, 2014).

24.     Plaintiff and the Class she seeks to represent now face years of constant
surveillance of their financial and personal records, monitoring, and loss of rights.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action on her own behalf, and on behalf of all other
persons similarly situated ("the Class").  The Class that Plaintiff seeks to represent is:

> All persons and entities who paid monies to Neiman Marcus in
> exchange for goods or services using a credit or debit card at one of
> Neiman Marcus' retail stores in California and whose personal and/or
> financial information was accessed through the data breach first
> acknowledged by Neiman Marcus on January 10, 2014, which lasted
> at least from July 16, 2013 until October 30, 2013.

Excluded from the Class are Defendants; officers, directors, and employees of
Defendants; any entity in which Defendants have a controlling interest; the affiliates,
legal representatives, attorneys, heirs, and assigns of the Defendants.

26.     The members of the Class are so numerous that the joinder of all members
is impractical.  Neiman Marcus has indicated that over one million customer cards are
affected.

27.     There is a well-defined community of interest among the members of the
Class because common questions of law and fact predominate, Plaintiff's claims are
typical of the members of the Class, and Plaintiff can fairly and adequately represent
the interests of the Class.

28.     This action satisfies the requirements of Federal Rule of Civil Procedure
23(b)(3) because it involves questions of law and fact common to the member of the
Class that predominate over any questions affecting only individual members,
including, but not limited to:

                    a.     Whether Defendants unlawfully used, maintained, lost or disclosed
                           Class members' personal and/or financial information;

b.    Whether Neiman Marcus unreasonably delayed in notifying affected customers of the data breach;

c.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach;

d.    Whether Defendants violated the requirements of California Civil Code Section 1798.80 *et seq.*;

e.    Whether Defendants' conduct violated the California Business & Professions Code §17200, *et seq.*;

f.    Whether Defendants' conduct was negligent;

g.    Whether Defendants acted willfully and/or with oppression, fraud, or malice;

h.    Whether Defendants' conduct constituted Intrusion;

i.    Whether Defendants' conduct constituted Public Disclosure of Private Facts;

j.    Whether Defendants' conduct constituted Misappropriation of Likeness and Identity;

k.    Whether Defendants' conduct violated Class members' California Constitutional Right to Privacy;

l.    Whether Defendants' conduct constituted Bailment;

m.    Whether Defendants' conduct constituted Conversion;

n.    Whether Defendants' conduct willfully and/or negligently violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*; and

o.    Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

29.    Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other class member, was misused and/or disclosed by Defendants.

30.     Plaintiff will fairly and accurately represent the interests of the Class.

31.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants and would lead to repetitive adjudication of common questions of law and fact.  Accordingly, class treatment is superior to any other method for adjudicating the controversy.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action under Rule 23(b)(3).

32.     Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

33.     Defendants have acted or refused to act on grounds that apply generally to the class, as alleged above, and certification is proper under Rule 23(b)(2).

## FIRST COUNT

**Violation of the California Unfair Competition Law, Business & Professions Code §17200, *et seq.***

34.     Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

35.     Defendants' conduct constitutes unfair and illegal and fraudulent business practices within the meaning of the California Business & Professions Code § 17200, *et seq*.

36.     Defendants' conduct violated certain laws as alleged herein.  By engaging in the said conduct in the course of doing business, Defendants engaged in unlawful business practices in violation of the California Business & Professions Code § 17200, *et seq*.

37.     By engaging in the above-described conduct in the course of doing

9

business, Defendants engaged in unfair business practices in violation of the California Business & Professions Code section 17200, *et seq*.  The harm to each Plaintiff outweighed any utility that Defendants' conduct may have produced.

38.     Defendants' failure to disclose information concerning the data breach directly and promptly to affected customers, constitutes a fraudulent act or practice in violation of California Business & Professions Code section 17200, *et seq*.

39.     Plaintiff suffered injury in fact and lost property and money as a result of Defendants' conduct.

40.     Plaintiff seeks restitution and injunctive relief on behalf of the Class.

## SECOND COUNT

**Invasion of Privacy - Intrusion, Public Disclosure of Private Facts, Misappropriation of Likeness and Identity, and California Constitutional Right to Privacy**

41.     Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

42.     Plaintiff had a reasonable expectation of privacy in the private information Defendants mishandled.

43.     By failing to keep Plaintiff's private information safe, and by misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendants invaded Plaintiff's privacy by:

      a.     intruding into Plaintiff's private affairs in a manner that would be highly offensive to a reasonable person;

      b.     publicizing private facts about Plaintiff, which is highly offensive to a reasonable person;

      c.     using and appropriating Plaintiff's identity without Plaintiffs' consent;

      d.     violating Plaintiff's right to privacy under California Constitution, Article 1, Section 1, through the improper use of Plaintiff's private

CLASS ACTION COMPLAINT

1  information properly obtained for a specific purpose for another
2  purpose, or the disclosure of it to some third party.

3  44.  Defendants knew, or acted with reckless disregard of the fact that, a
4  reasonable person in Plaintiff's position would consider Defendants' actions highly
5  offensive.

6  45.  Defendants invaded Plaintiff's right to privacy and intruded into
7  Plaintiff's private affairs by misusing and/or disclosing Plaintiff's private information
8  without her informed, voluntary, affirmative, and clear consent.

9  46.  As a proximate result of such misuse and disclosures, Plaintiff's
10 reasonable expectations of privacy in her private information was unduly frustrated
11 and thwarted.  Defendants' conduct amounted to a serious invasion of Plaintiff's
12 protected privacy interests.

13 47.  In failing to protect Plaintiff's private information, and in misusing and/or
14 disclosing Plaintiff's private information, Defendants have acted with malice and
15 oppression and in conscious disregard of Plaintiff's and the Class Members' rights to
16 have such information kept confidential and private.  Plaintiff, therefore, seeks an
17 award of punitive damages on behalf of the Class.

18 **THIRD COUNT**

19 **Negligence**

20 48.  Plaintiff incorporates the substantive allegations contained in all previous
21 paragraphs as if fully set forth herein.

22 49.  Defendants came into possession of Plaintiff's private information and
23 had a duty to exercise reasonable care in safeguarding and protecting such information
24 from being compromised, lost, stolen, misused, and/or disclosed to unauthorized
25 parties.

26 50.  Neiman Marcus had a duty to timely disclose that Plaintiff's private
27 information within its possession had been compromised.

28 51.  Defendants had a duty to have procedures in place to detect and prevent

11

the loss or unauthorized dissemination of Plaintiff's private information.

52. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff by failing to exercise reasonable care in protecting and safeguarding Plaintiff' private information within Defendants' possession.

53. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff by failing to exercise reasonable care by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's private information.

54. Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to the Plaintiff and the Class Members the fact that their private information within their possession had been compromised.

55. Defendants' negligent and wrongful breach of their duties owed to Plaintiff and the Class proximately caused Plaintiff's and Class Members' private information to be compromised.

56. Plaintiff seeks the award of actual damages on behalf of the Class.

## FOURTH COUNT

### Bailment

57. Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

58. Plaintiff and the Class members delivered and entrusted their private information to Defendants for the sole purpose of receiving services from Defendants.

59. During the time of bailment, Defendants owed Plaintiff and the Class members a duty to safeguard this information properly and maintain reasonable security procedures and practices to protect such information. Defendants breached this duty.

60. As a result of these breaches of duty, Plaintiff and the Class Members have suffered harm.

61. Plaintiff seeks actual damages on behalf of the Class.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH COUNT

### Conversion

62.     Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

63.     Plaintiff and Class Members were the owners and possessors of their private information.  As the result of Defendants' wrongful conduct, Defendants have interfered with Plaintiff's and Class Members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

64.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class Members suffered injury, damage, loss, or harm and therefore seek compensatory damages.

65.     In converting Plaintiff's private information, Defendants have acted with malice, oppression and in conscious disregard of Plaintiff's and Class Members' rights. Plaintiff, therefore, seeks an award of punitive damages on behalf of the Class.

66.     Plaintiff and the Class Members did not consent to Defendants' mishandling and loss of their private information.

## SIXTH COUNT

### Violation of Cal. Civ. Code § 1798.80, *et seq.*

67.     Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

68.     The data breach described above constituted a "breach of the security system" of Neiman Marcus, within the meaning of Section 1798.82(g) of the California Civil Code.

69.     The information lost in the data breach constituted "personal information" within the meaning of Section 1798.80(e) of the California Civil Code.

70.     Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information

13

1    compromised in the data breach.

2          71.    Neiman Marcus unreasonably delayed informing anyone about the breach

3    of security of Plaintiff's and Class Members' confidential and non-public information

4    after Defendants knew the data breach had occurred.

5          72.    Neiman Marcus failed to disclose to Plaintiff and Class Members, without

6    unreasonable delay, and in the most expedient time possible, the breach of security of

7    their unencrypted, or not properly and securely encrypted, personal information when

8    they knew or reasonably believed such information had been compromised.

9          73.    Upon information and belief, no law enforcement agency instructed

10   Neiman Marcus that notification to Plaintiff and Class Members would impede

11   investigation.

12         74.    As a result of Defendants' violation of Cal. Civ. Code § 1798.80, *et seq.*,

13   Plaintiff and Class Members incurred economic damages, including expenses

14   associated with necessary credit monitoring.

15         75.    Plaintiff, individually and on behalf of the Class, seeks all remedies

16   available under Cal. Civ. Code § 1798.84, including, but not limited to: (a) damages

17   suffered by Class Members as alleged above; (b) statutory damages for Defendants'

18   willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; and (c)

19   equitable relief.

20         76.    Plaintiff, individually and on behalf of the Class, also seeks reasonable

21   attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

22                                    **SEVENTH COUNT**

23       **Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.***

24         77.    Plaintiff incorporates the substantive allegations contained in all previous

25   paragraphs as if fully set forth herein.

26         78.    The Fair Credit Reporting Act ("FCRA") requires consumer reporting

27   agencies to adopt and maintain procedures for meeting the needs of commerce for

28   consumer credit, personnel, insurance and other information in a manner fair and

1   equitable to consumers while maintaining the confidentiality, accuracy, relevancy and

2   proper utilization of such information. 15 U.S.C. § 1681(b).

3        79.   The FCRA allows for a private right of action against any reporting

4   agency for the negligent or willful violation of any duty imposed under the statute.

5        80.   The FCRA defines a "consumer reporting agency" as:

6      Any person which, for monetary fees, dues, or on a cooperative nonprofit basis,
       regularly engages in whole or in part in the practice of assembling or evaluating

7      consumer credit information or other information on consumers for the purpose
       of furnishing consumer reports to third parties, and which uses any means or

8      facility of interstate commerce for the purpose of preparing or furnishing
       consumer reports.

9

10  15 U.S.C. § 1681a(f).

11       81.   FCRA defines a "consumer report" as:

12      [A]ny written, oral, or other communication of any information by a consumer
       reporting agency bearing on a consumer's credit worthiness, credit standing,

13     credit capacity, character, general reputation, personal characteristics, or mode
       of living which is used or expected to be used or collected in whole or in part for

14     the purpose of establishing the consumer's eligibility for credit or insurance to be
       used primarily for personal, family, or household purposes; employment

15     purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b).

16

17  15 U.S.C § 1681a(d).

18       82.   Neiman Marcus is a consumer reporting agency as defined under the

19  FCRA because Neiman Marcus, for monetary fees, regularly engages, in part, in the

20  practice of assembling or evaluating consumer credit information or other information

21  on consumers for the purpose of furnishing consumer reports to third parties and/or

22  uses interstate commerce for the purpose of preparing and/or furnishing consumer

23  reports.

24       83.   As a consumer reporting agency, Neiman Marcus was (and continues to

25  be) required to adopt and maintain procedures designed to protect and limit the

26  dissemination of consumer credit, personnel, insurance and other information (such as

27  Plaintiff's and other Class Members' Private Information) in a manner fair and

28  equitable to consumers, while maintaining the confidentiality, accuracy, relevancy, and

15

1  proper utilization of such information.  Neiman Marcus, however, violated FCRA by

2  failing to adopt and maintain such protective procedures which, in turn, directly and/or

3  proximately resulted in the theft of Plaintiff's and Class Members' Private Information

4  and its wrongful dissemination.

5      84.    On information and belief, Neiman Marcus knowingly failed to

6  adequately implement these proactive actions to secure and protect Plaintiff's and

7  Class Members' Private Information and/or put itself in a position to immediately

8  notify Plaintiff and Class Members about the data breach.

9      85.    Alternatively, Neiman Marcus negligently violated the FCRA by failing

10  to adopt and maintain procedures designed to protect and limit the dissemination of

11  Plaintiff's and Class Members' Private Information for the permissible purposes

12  outlined by the FCRA which, in turn, directly and/or proximately resulted in the

13  wrongful dissemination of Plaintiff's and Class Members' Private Information.

14      86.    It was reasonably foreseeable that Neiman Marcus' failure to implement

15  and maintain procedures to protect and secure Plaintiff's and Class Members' Private

16  Information would result in an unauthorized third party gaining access to their Private

17  Information for no permissible purpose under the FCRA.

18      87.    As a direct and/or proximate result of Neiman Marcus' willful, reckless,

19  and/or negligent violations of the FCRA as described above, Plaintiff's and Class

20  Members' Private Information was stolen and made accessible to unauthorized third

21  parties.

22      88.    As a direct and/or proximate result of Neiman Marcus' willful and/or

23  reckless violations of the FCRA, as described above, Plaintiff and Class Members

24  were (and continue to be) damaged in the form of, without limitation, expenses for

25  credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety,

26  emotional distress, loss of privacy and other economic and non-economic harm.

27      89.    Plaintiff and Class Members, therefore, are entitled to compensation for

28  their actual damages including: (i) actual damages resulting from the identity theft; (ii)

1   out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or

2   identity fraud pressed upon them by the data breach; (iii) the value of their time spent

3   mitigating identity theft and/or identity fraud and/or the increased risk of identity theft

4   and/or identity fraud; (iv) deprivation of the value of their Private Information, for

5   which there is a well-established national and international market; (v) anxiety and

6   emotional distress; and (vi) statutory damages of not less than $100, and not more than

7   $1000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15

8   U.S.C. §1681n(a).

### PRAYER FOR RELIEF

10   WHEREFORE Plaintiff prays for judgment as follows:

11       A.    For an Order certifying this action as a class action and appointing

12   Plaintiff and their Counsel to represent the Class;

13       B.    For equitable relief enjoining Defendants from engaging in the wrongful

14   conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's

15   and Class Members' Private Information, and from refusing to issue prompt, complete

16   and accurate disclosures to the Plaintiff and Class Members;

17       C.    For equitable relief requiring restitution and disgorgement of the revenues

18   wrongfully retained as a result of Defendants' wrongful conduct;

19       D.    For an award of actual damages, compensatory damages, statutory

20   damages, and statutory penalties, in an amount to be determined;

21       E.    For an award of punitive damages;

22       F.    For an award of costs of suit and attorneys' fees, as allowable by law; and

23       G.    Such other and further relief as this court may deem just and proper.

26   ////

28   ////

CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of their claims to the extent authorized by law.

Dated:        January 29, 2014              AHDOOT & WOLFSON, PC

By:  _____
     Tina Wolfson
     Robert Ahdoot
     Theodore W. Maya
     Bradley K. King
     1016 Palm Avenue
     West Hollywood, California 90069
     Tel: (310) 474-9111
     Fax: (310) 474-8585

     Attorneys for Plaintiff,
     Christina Wong

18

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

CHRISTINA WONG, individually and on behalf of all others similarly situated

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company, and DOES 1 10

**(b) Attorneys** (Firm Name, Address and Telephone Number  If you are representing yourself, provide same information )
Tina Wolfson
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, CA 90069, 310-474-9111

**(b) Attorneys** (Firm Name, Address and Telephone Number  If you are representing yourself, provide same information )

**II. BASIS OF JURISDICTION** (Place an X in one box only )

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U S Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District (Specify)

☐ 6 Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23.** ☒ Yes ☐ No  ☒ **MONEY DEMANDED IN COMPLAINT:** $ over $5,000,000

**VI. CAUSE OF ACTION** (Cite the U S Civil Statute under which you are filing and write a brief statement of cause  Do not cite jurisdictional statutes unless diversity )
28 U S C Section 1391, Invasion of privacy, negligence, and other violations of law relating to a data breach of customers' personal and financial information

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **TORTS** **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ- enced & Corrupt Org | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl Vet ) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com- modities/Exchange | ☐ 153 Recovery of Overpayment of Vet Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U S Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret Inc Security Act | |

CV14- 0703

**FOR OFFICE USE ONLY:**  Case Number _____

CV-71 (09/13)                              CIVIL COVER SHEET                              Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?**<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION
Enter "Southern" in response to Question D, below

If none applies, answer question C2 to the right ➡

**C 2 Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION
Enter "Eastern" in response to Question D, below

If none applies, go to the box below ⬇

Your case will initially be assigned to the
WESTERN DIVISION
Enter "Western" in response to Question D below

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above ➡ | WESTERN DIVISION |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] NO   [ ] YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [X] NO   [ ] YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   [ ] A  Arise from the same or closely related transactions, happenings, or events; or

[ ] B  Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C  For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _T. Walfson_      DATE: January 29, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet  (For more detailed instructions, see separate instructions sheet)

Key to Statistical codes relating to Social Security Cases

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc , for certification as providers of services under the program (42 U S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S C 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended, plus all claims filed for child's insurance benefits based on disability. (42 U.S C  405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended  (42 U S.C  405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S C. 405 (g)) |